UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TERRENCE T. LAFAIVE,

                Plaintiff,

v.                                           Case No. 22-cv-1348-pp

PETER M. WOLFF, LESLI S. BOESE,
TRACY KACZIK, DEPARTMENT OF CORRECTIONS
and DIVISON OF HEARINGS AND APPEALS,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

Terrence T. LaFaive, who is incarcerated at Stanley Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

I.     **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was an incarcerated person when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C.

1

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 15, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $0.05. Dkt. No. 5. The court received that fee on November 22, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff has sued Attorney Peter M. Wolff, Waukesha County Deputy District Attorney Lesli S. Boese, Parole Agent Tracy Kaczik, the Department of Corrections and the Division of Hearings and Appeals. Dkt. No. 1 at 1.

The plaintiff alleges that on April 2, 2020, Wolff was appointed as his trial counsel for "an irrelevant criminal matter." Id. at ¶1. The plaintiff allegedly signed off on his revocation for extended supervision and was sent to Dodge Correctional Institution. Id. at ¶2. He says he spoke with Kaczik and asked for

3

a "reconfinement hearing" instead. Id. While the plaintiff was at Dodge, Kaczik allegedly sent him an outdated revocation packet that was from a previous revocation he won. Id. at ¶3.

The plaintiff states that on July 20, 2020, he had a reconfinement hearing before Administrative Law Judge Christine Hansen via video from Dodge, in which he represented himself. Id. at ¶4. The plaintiff alleges that before going on the record, he told Judge Hansen that the revocation packet was inaccurate, and she acknowledged that the packet Kaczik sent her was incorrect. Id. at ¶5. During the hearing, Judge Hansen stated that she didn't know what the allegations were because Kaczik sent her a sixty-page packet, and the plaintiff reiterated that the packet was incorrect. Id. at ¶6. Judge Hansen allegedly said that the plaintiff had not signed the revocation waiver and she asked him what allegations he thought he signed off on, to which the plaintiff responded that he didn't remember. Id. at ¶7. The plaintiff alleges that Judge Hansen said she needed a signed copy of the waiver and that she would contact his agent by email. Id. at ¶8. She then allegedly asked the plaintiff if he wanted to go ahead with the hearing and the plaintiff said he wanted to waive the hearing. Id. at ¶9. The plaintiff states that Judge Hansen then coerced the plaintiff to not waive the hearing by stating that "she's already here" and reminding him that he had already been incarcerated for 174 days; the plaintiff says he then stated, "you know what, we'll have the hearing." Id. at ¶10. Judge Hansen allegedly put the plaintiff under oath and questioned him regarding the inaccurate revocation packet, concluded that the packet was "suspect," and

4

said that she would contact his agent and leave the record open. Id. at ¶11. The plaintiff states that Judge Hansen rescheduled the hearing for August 10, 2020, with the correct information. Id.

At the rescheduled hearing on August 10, 2020, Judge Hansen had the correct information, and the plaintiff was revoked. Id. at ¶12. The plaintiff states that he served his time and that he is not challenging the length of incarceration or his criminal case. Id.

The plaintiff alleges that on August 30, 2020, he asked Wolff for "all electronic communication including but not limited to emails and text messages" and Wolff responded by sending the plaintiff only two pages of emails between he and the prosecutor along with a motion to withdraw from the plaintiff's criminal case. Id. at ¶13.

The plaintiff states that over a year later, on October 10, 2021, he filed a public record request to the Waukesha County District Attorney's Office for all electronic information from the State and Peter Wolff. Id. at ¶13.5. When they did not respond, he allegedly filed a petition for a writ of mandamus. Id. The plaintiff says that he was appointed counsel and that on January 31, 2022, she sent him ten pages of emails to Boese that Wolff "apparently omitted[.]" Id. at ¶14. He says the emails were "in disarray and incomplete." Id. The plaintiff alleges that on one of the emails to Boese, there was a handwritten note from Wolff with the time and location of the plaintiff's reconfinement hearing along with the name of his agent, Kaczik. Id. at ¶15. The plaintiff states that he never provided this information to Wolff, who was not his lawyer at the reconfinement

5

hearing; because the plaintiff represented himself at that hearing, he speculates that Wolff must have gotten the information from Boese or Kaczik. Id. at ¶16.

The plaintiff alleges that during the hearing on the motion to dismiss his mandamus petition, Assistant Attorney General Sarah Huck appeared on behalf of the District Attorney and said she had about fifteen pages of emails (five more than the plaintiff had) and no text messages between Boese and Wolff. Id. at ¶17. He states that an Office of Lawyer Regulation investigation of Wolff revealed that there were text messages between Boese and Wolff. Id. at ¶18.

The plaintiff claims:

> Due to the ODD behavior (knowing out gate the packet was erroneous) (still putting me under oath in furtherance of the conspiracy) of the A.L.J., Attorney Peter Wolff's unknown source of my reconfinement details combined with his omission of emails (10 out of 15) and inconsistent/conflicting testimony about the existence of text messages between him and Attorney Boese, I believe Tracy Kaczik intentionally sent an inaccurate revocation packet per express (agreement) "meeting of the minds," perhaps email, with defendants, ALJ attempting to retrieve perjured testimony, thus Ms. Boese acting in the role of investigator, "attempting to find clues" and Parole Agent Kaczik function was not "intimately associated with the judicial process."

Id. The plaintiff claims that the defendants' actions violated his substantive due process rights, and he should be given the opportunity to retrieve the missing messages. Id. He claims that the defendants conspired to violate his constitutional rights. Id. at 4. The plaintiff seeks declaratory and injunctive relief, and a formal apology. Id. at 5.

6

C. Analysis

To start, the court notes that most of the defendants the plaintiff has sued are entities and individuals who either are not subject to suit, are immune from suit or are not state actors.

The plaintiff cannot sue the Department of Corrections or the Division of Hearings and Appeals because they are agencies of the State of Wisconsin. "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. §1983." Johnson v. Supreme Court of Ill., 165 F.3d 1140, 1141 (7th Cir. 1999) Bradley v. Wis. Dep't of Children and Families, 528 F. App'x 680, 681 (7th Cir. 2013); Andreola v. Wisconsin, 171 F. App'x 514, 515 (7th Cir. 2006).

District Attorney Boese is entitled to absolute prosecutorial immunity for conduct that relates to his role as advocate for the state. Olson v. Champaign Cty., Ill., 784 F.3d 1093, 1102 (7th Cir. 2015) (citing Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993)). A prosecutor's immunity turns on "the nature of the function performed, not the identity of the actor who performed it." Id. (quoting Forrester v. White, 484 U.S. 219, 229 (1988)). To the extent the plaintiff sues Boese for his prosecutorial activities, Boese is entitled to absolute immunity.

Similarly, judges—like Judge Hansen—are immune from suit for actions they take in their official capacities; the only exceptions are actions a judge takes outside her judicial capacity and judicial actions she takes in the complete absence of all jurisdiction. Mireles v. Waco, 502 U.S. 9, 11-12 (1991). Judicial immunity applies "even when the judge is accused of acting maliciously and corruptly . . . ." Pierson v. Ray, 386 U.S. 547, 554 (1967).

7

Probation officers, too, are "absolutely immune from suits challenging conduct intimately associated with the judicial phase of the criminal process." Tobey v. Chibucos, 890 F.3d 634, 649 (7th Cir. 2018) (citations omitted).

For the purposes of a §1983 civil rights case, which allows a plaintiff to sue individuals who violate his constitutional rights under color of state law, a criminal defense attorney (such as Wolff) is not a "state actor when he performs the traditional function of counsel to a defendant in a criminal case." Walton v. Neslund, 248 F. App'x 733, 733 (7th Cir. 2007).

Even if Boese, Hansen and Kaczik are not immune from suit, the plaintiff has not stated a claim against them. The plaintiff alleges that the defendants conspired to violate his *substantive* due process rights because Parole Agent Kaczik provided an outdated revocation packet for the plaintiff's revocation hearing, Attorney Wolff did not send the plaintiff all the electronic communication between him and Boese, Judge Hansen knew the packet was erroneous but still put the plaintiff under oath at the first reconfinement hearing and Wolff apparently knew the time and location of the hearing.

"'Substantive due process' is a substantive limitation on the power of government to legislate, preventing legislatures from trampling on fundamental rights found elsewhere in the constitution." Durigan v. Sanitary Dist. No. 4—Town of Brookfield, 5 F. App'x 492, 494 (7th Cir. 2001) (citing Gosnell v. City of Troy, 59 F.3d 654, 657 (7th Cir. 1994); Schroeder v. City of Chi., 927 F.2d 957, 961 (7th Cir. 1991); Coniston Corp. v. Vill. of Hoffman Estates, 844 F.2d 461, 465 (7th Cir. 1988)). "'[T]he scope of substantive due process is very limited.'"

Campos v. Cook Cty., 932 F.3d 972, 975 (7th Cir. 2019) (quoting Tun v. Whitticker, 398 F.3d 899, 902 (7th Cir. 2005)).

> [C]ourts should be "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 . . . (1992). Given its slippery nature, the requirements for stating a substantive due process claim are similarly vague. A plaintiff must allege that the government violated a fundamental right or liberty. *[Washington v.] Glucksberg*, 521 U.S. [702] at 720 [(1997)] . . . ; *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). And that violation must have been arbitrary and irrational. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 . . . (1998); *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009). Substantive due process protects against only the most egregious and outrageous government action. *See Lewis*, 523 U.S. at 845 . . . ; *Belcher*, 497 F.3d at 753 (7th Cir. 2007).

Id.

> The Supreme Court has explained that its

> established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," [*Moore v. City of East Cleveland, Ohio*, 431 U.S. 494], at 503 . . . (plurality opinion) [(1977)]; *Snyder v. Massachusetts*, 291 U.S. 97, 105 . . . (1934) ("So rooted in the traditions and conscience of our people as to be ranked as fundamental"), and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed," *Palko v. Connecticut*, 302 U.S. 319, 325, 326 . . . (1937). Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. [*Reno v.*] *Flores*, [507 U.S. 292] at 302 . . . [(1993)]. Our Nation's history, legal traditions, and practices thus provide the crucial "guideposts for responsible decisionmaking," *Collins, supra,* at 125 . . . , that direct and restrain our exposition of the Due Process Clause.

Glucksburg, 521 U.S. at 720-21.

"In a long line of cases," the Court has held that "in addition to the specific freedoms protected by the Bill of Rights," substantive due process protects the rights to marry, to direct the education and upbringing of one's children, to marital privacy, to use contraception, and to bodily integrity. Id. at 720 (citations omitted).

The plaintiff has not alleged anything that comes close to alleging a violation of *substantive* due process. His allegations do not allege violations of rights deeply rooted in the nation's history, such as the right to marry or the right to bodily integrity. Nor has he provided a "careful description" of the liberty interest he alleges was infringed.

Because he is not trained in the law, perhaps the plaintiff did not understand the difference between *substantive* due process (described above) and *procedural* due process. Most individuals who allege violations of the due process clause allege violations of *procedural* due process—in other words, they allege that they were deprived of their liberty or property without being afforded the required process. To state a procedural due process claim, a plaintiff must allege "(1) deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation." Tucker v. City of Chi., 907 F.3d 487, 491 (7th Cir. 2018) (quoting Michalowicz v. Vill. Of Bedford Park, 528 F.3d 530, 534 (7th Cir. 2008)). In Wisconsin,

> [i]n a revocation setting, due process requires that there be "an informal hearing structure to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrissey v. Brewer*, 408 U.S. 471, 474 (1982). [The

10

parolee] was entitled to "written notice of the claimed violations of probation; disclosure to the probationer of the evidence against him; the opportunity to be heard in person and to present witnesses and documentary evidence; the right to confront and cross-examine adverse witnesses; a neutral and detached hearing body; and a written statement by the fact finder as to the evidence relied on and reasons for revocation." [*State ex rel.*] Greer [*v. Wiedenhoft*], [353 Wis. 2d 307, 336 (Wis. 2014)].

Petrusch v. Hayes, No. 2016AP2213, 2017 WL 11686803, at *2 (Wis. Ct. App. Sept. 13, 2017).

The plaintiff has not stated a claim for a procedural due process violation.[1] By his own account, he received a hearing (in fact, he ended up having two hearings), he received written notice through the (incorrect) revocation packet before the hearing, as well as evidence of the claimed violations, and he had the opportunity to present witnesses and evidence (and to tell the ALJ that something was wrong with the pre-hearing packet). He says that he is not contesting the outcome of that hearing—he hasn't argued that the ALJ was biased or that he didn't receive a fair hearing.

Much of the plaintiff's concern seems to be related what happened *after* the reconfinement hearing. Three weeks after that hearing, for reasons that the plaintiff does not explain, he asked his criminal defense attorney in the

---

[1] The petitioner may have filed this civil rights case while there are appeals pending in state court based on the same issues. The publicly available docket shows that the plaintiff has five appeals pending in state court, two of which are appeals from cases he filed against the circuit court for Waukesha County and one of which is an appeal from a case which he filed against the records custodian of the Waukesha County District Attorney's Office. See Case Nos. 2022AP000336, 2022AP000651 and 2022AP000871 (available at https://wscca.wicourts.gov/). Although this may mean his has not exhausted his state remedies, the court nonetheless has analyzed his claims.

11

underlying (and, according to the plaintiff, "irrelevant") criminal case for all the emails between his attorney and the prosecuting district attorney. He says the defense attorney gave him only two pages of such emails. Again for reasons that the plaintiff does not explain, over a year later he filed a public information request with the district attorney's office, asking for communications between the defense attorney and the prosecutor. He had to petition the court to mandamus the D.A's office, but eventually they produced ten pages of such emails, one of which bore a handwritten notation from the criminal defense attorney of the time and location of the plaintiff's reconfinement hearing and the name of his supervising agent. The plaintiff says there was a hearing on the mandamus petition, at which the assistant attorney general indicated that there were fifteen pages of emails between the assistant D.A. and the plaintiff's defense counsel, and that a later investigation by the Office of Lawyer Regulation revealed that there were texts between the prosecutor and criminal defense counsel.

The plaintiff believes that the conflicting information he received about the number of emails and texts exchanged between his criminal counsel and the prosecutor, along with the fact that the original revocation packet was "incorrect" in some way and the fact that his criminal defense attorney—who did not represent the plaintiff at the reconfinement hearing—knew the time and location of the hearing and the name of his probation officer, show that the probation officer deliberately provided the ALJ with incorrection information, that the ALJ started the first reconfinement hearing despite being told about

the incorrect information and that all the defendants conspired against him in some way.

The court cannot follow the plaintiff's logic. If, as he speculates, the probation officer deliberately provided incorrect information in the probation packet, that would have been wrong and improper. But the plaintiff had the opportunity to advise the ALJ of the incorrect information. The ALJ questioned him about it and, it appears, ended up agreeing with him that the packet was wrong. So, instead of proceeding with the reconfinement hearing at that time, she scheduled another one, and the plaintiff admits that at that second hearing, the ALJ had the correct information. The plaintiff has not explained what process he was deprived of, or how he was injured by the fact that the original packet was incorrect.

As for the conflicting information about how many emails or texts were exchanged between criminal defense attorney Wolff and ADA Boese, the plaintiff again fails to explain how he was harmed by receiving the conflicting information or even why the number of communications between the two was relevant. Many clients would be concerned if their lawyers did *not* communicate frequently with the prosecutor during their criminal cases; they would expect their lawyers to be demanding discovery, exploring options for plea deals and obtaining information to prepare for trial. The plaintiff does not argue that his criminal defense lawyer provided him with ineffective assistance of counsel; indeed, the criminal defense lawyer did not represent the plaintiff at the reconfinement hearing.

13

Case 2:22-cv-01348-PP   Filed 12/31/22   Page 13 of 17   Document 8

Finally, as to the plaintiff's concern that his criminal defense attorney somehow was aware of his reconfinement hearing even though the plaintiff had not told counsel about that hearing, he may well be correct that the ADA or the probation officer told defense counsel about the hearing. It is not unusual for a criminal defendant's trial counsel to be contacted when the defendant is alleged to have violated the conditions of parole, to determine whether the lawyer intends to represent the defendant at the revocation hearing. The plaintiff has not indicated what harm he suffered because of his defense counsel knowing about the time and location of the hearing.

If the plaintiff believes that his lawyer acted inappropriately, he has remedies. He could have appealed, both his conviction and his revocation. He could have filed a complaint with OLR—which it appears that he did. But nothing the plaintiff has alleged in this complaint supports a claim of a procedural due process violation.

Because the plaintiff has not stated a claim for violation of his constitutional rights, he may not proceed on a conspiracy claim. See Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008) (conspiracy is not an independent basis of liability in §1983 actions). Even if the plaintiff had stated a claim that each of the individual defendants violated his constitutional rights, he has presented nothing other than raw speculation that they conspired with each other to violate his rights. See Ryan v. Mary Immaculate Queen Center, 188 F.3d 857, 860 (7th Cir. 1999); Alarm Detection Sys., Inc. v. Vill. of Schaumburg, 930 F.3d 812, 827 (7th Cir. 2019).

14

The complaint does not state a claim for relief under §1983. Although courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so where the amendment would be futile. See Fields v. Miller, No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. April 5, 2022) (citing Zimmerman v. Bornick, 25 F.4th 491, 492 (7th Cir. 2022); Runnion ex rel. Runnion v Girl Scourts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519-20 (7th Cir. 2015); Perez v. Fenoglio, 792 F3.d 768, 783 (7th Cir. 2015)). The plaintiff's complaint is thorough in its allegations of the facts surrounding his claim, so the court finds that further amendment would be futile. Because the plaintiff has not stated a claim for which this federal court may grant relief, the court must dismiss his complaint.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The clerk will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the $349.95 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's

trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Stanley Correctional Institution.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Fed. R. Civ. P. 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Fed. R. Civ. P. 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

16

Case 2:22-cv-01348-PP   Filed 12/31/22   Page 16 of 17   Document 8

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of December, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**