UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TERRENCE T. LAFAIVE,

                Plaintiff,

v.                                                       Case No. 22-cv-1348-pp

PETER M. WOLFF, LESLI S. BOESE,
TRACY KACZIK, DEPARTMENT OF CORRECTIONS
and DIVISION OF HEARINGS AND APPEALS,

                Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND JUDGMENT (DKT. NO. 10)**

---

Plaintiff Terrence T. LaFaive, who is incarcerated at Stanley Correctional Institution, filed this case alleging that the defendants violated his constitutional rights. Dkt. No. 1. The court screened the complaint under 28 U.S.C. §1915A and dismissed it for failure to state a claim upon which relief could be granted. Dkt. No. 8. The court entered judgment on December 31, 2022. Dkt. No. 9. The plaintiff subsequently filed a motion to amend the judgment under Federal Rule of Civil Procedure 59(e). Dkt. No. 10.

"Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." Obriecht v. Raemisch, 517 F.3d 489, 494 (7th Cir. 2008) (citing Sigsworth v. City of Aurora, 487 F.3d 506, 511-12 (7th Cir. 2007)). Whether to grant a motion to amend judgment "is entrusted to the sound judgment of the district court." In re Prince, 85 F.3d 314, 324 (7th Cir. 1996).

1

The plaintiff's motion does not present any newly-discovered evidence. This means that, under Rule 59(e), he is entitled to relief only if he can demonstrate that the court's rulings constituted a manifest error of law. A "manifest error of law" "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.2d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

The plaintiff's complaint alleged that the defendants conspired to violate his substantive due process rights by communicating with each other regarding the plaintiff's reconfinement hearing and subsequently lying about the amount and source of the communications. Dkt. No. 1. The court's screening order found that defendant DA Boese was entitled to absolute prosecutorial immunity to the extent the plaintiff had sued Boese for his prosecutorial activities. Dkt. No. 8 at 7. The screening order found that Judge Hansen was immune from suit for actions taken in her judicial capacity.[1] Id. at 7-8. At screening, the court also held that probation officers, like defendant Tracy Kaczik, are absolutely immune from suits challenging conduct intimately associated with the judicial phase of the criminal process. Id. at 8. The court found that defendant Peter Wolff, the plaintiff's criminal defense attorney, was not a state actor under 42 U.S.C. §1983 when he performed the traditional function of counsel to a defendant in a criminal case. Id.

---

[1] The complaint caption did not name Judge Hansen as a defendant.

Next, the court's screening order stated, relevant part:

> Even if Boese, Hansen and Kaczik are not immune from suit, the plaintiff has not stated a claim against them. The plaintiff alleges that the defendants conspired to violate his substantive due process rights because Parole Agent Kaczik provided an outdated revocation packet for the plaintiff's revocation hearing, Attorney Wolff did not send the plaintiff all the electronic communication between him and Boese, Judge Hansen knew the packet was erroneous but still put the plaintiff under oath at the first reconfinement hearing and Wolff apparently knew the time and location of the hearing.
>
> ...
>
> The plaintiff has not alleged anything that comes close to alleging a violation of substantive due process. His allegations do not allege violations of rights deeply rooted in the nation's history, such as the right to marry or the right to bodily integrity. Nor has he provided a "careful description" of the liberty interest he alleges was infringed.
>
> ...
>
> The plaintiff has not stated a claim for a procedural due process violation.[2] By his own account, he received a hearing (in fact, he ended up having two hearings), he received written notice through the (incorrect) revocation packet before the hearing, as well as evidence of the claimed violations, and he had the opportunity to present witnesses and evidence (and to tell the ALJ that something was wrong with the pre-hearing packet). He says that he is not contesting the outcome of that hearing—he hasn't argued that the ALJ was biased or that he didn't receive a fair hearing.
>
> Much of the plaintiff's concern seems to be related to what happened after the reconfinement hearing. Three weeks after that hearing, for reasons that the plaintiff does not explain, he asked his criminal defense attorney in the underlying (and, according to the plaintiff, "irrelevant") criminal case for all the emails between his attorney and the prosecuting district attorney. He says the defense attorney gave him only two pages of such emails. Again for reasons that the plaintiff does not explain, over a year later he filed a public information request with the district attorney's office, asking for communications between the defense attorney and the prosecutor. He had to petition the court to mandamus the D.A's office, but eventually they produced ten pages of such emails, one of which bore a handwritten notation from the criminal defense attorney of

the time and location of the plaintiff's reconfinement hearing and the name of his supervising agent. The plaintiff says there was a hearing on the mandamus petition, at which the assistant attorney general indicated that there were fifteen pages of emails between the assistant D.A. and the plaintiff's defense counsel, and that a later investigation by the Office of Lawyer Regulation revealed that there were texts between the prosecutor and criminal defense counsel.

The plaintiff believes that the conflicting information he received about the number of emails and texts exchanged between his criminal counsel and the prosecutor, along with the fact that the original revocation packet was "incorrect" in some way and the fact that his criminal defense attorney—who did not represent the plaintiff at the reconfinement hearing—knew the time and location of the hearing and the name of his probation officer, show that the probation officer deliberately provided the ALJ with incorrect information, that the ALJ started the first reconfinement hearing despite being told about the incorrect information and that all the defendants conspired against him in some way.

The court cannot follow the plaintiff's logic. If, as he speculates, the probation officer deliberately provided incorrect information in the probation packet, that would have been wrong and improper. But the plaintiff had the opportunity to advise the ALJ of the incorrect information. The ALJ questioned him about it and, it appears, ended up agreeing with him that the packet was wrong. So, instead of proceeding with the reconfinement hearing at that time, she scheduled another one, and the plaintiff admits that at that second hearing, the ALJ had the correct information. The plaintiff has not explained what process he was deprived of, or how he was injured by the fact that the original packet was incorrect.

As for the conflicting information about how many emails or texts were exchanged between criminal defense attorney Wolff and ADA Boese, the plaintiff again fails to explain how he was harmed by receiving the conflicting information or even why the number of communications between the two was relevant. Many clients would be concerned if their lawyers did not communicate frequently with the prosecutor during their criminal cases; they would expect their lawyers to be demanding discovery, exploring options for plea deals and obtaining information to prepare for trial. The plaintiff does not argue that his criminal defense lawyer provided him with ineffective assistance of counsel; indeed, the criminal defense lawyer did not represent the plaintiff at the reconfinement hearing.

4

Finally, as to the plaintiff's concern that his criminal defense attorney somehow was aware of his reconfinement hearing even though the plaintiff had not told counsel about that hearing, he may well be correct that the ADA or the probation officer told defense counsel about the hearing. It is not unusual for a criminal defendant's trial counsel to be contacted when the defendant is alleged to have violated the conditions of parole, to determine whether the lawyer intends to represent the defendant at the revocation hearing. The plaintiff has not indicated what harm he suffered because of his defense counsel knowing about the time and location of the hearing.

If the plaintiff believes that his lawyer acted inappropriately, he has remedies. He could have appealed, both his conviction and his revocation. He could have filed a complaint with OLR—which it appears that he did. But nothing the plaintiff has alleged in this complaint supports a claim of a procedural due process violation.

Because the plaintiff has not stated a claim for violation of his constitutional rights, he may not proceed on a conspiracy claim. See Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008) (conspiracy is not an independent basis of liability in §1983 actions). Even if the plaintiff had stated a claim that each of the individual defendants violated his constitutional rights, he has presented nothing other than raw speculation that they conspired with each other to violate his rights. See Ryan v. Mary Immaculate Queen Center, 188 F.3d 857, 860 (7th Cir. 1999); Alarm Detection Sys., Inc. v. Vill. of Schaumburg, 930 F.3d 812, 827 (7th Cir. 2019).

The complaint does not state a claim for relief under §1983. Although courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so where the amendment would be futile. See Fields v. Miller, No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. April 5, 2022) (citing Zimmerman v. Bornick, 25 F.4th 491, 492 (7th Cir. 2022); Runnion ex rel. Runnion v Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519-20 (7th Cir. 2015); Perez v. Fenoglio, 792 F3.d 768, 783 (7th Cir. 2015)). The plaintiff's complaint is thorough in its allegations of the facts surrounding his claim, so the court finds that further amendment would be futile. Because the plaintiff has not stated a claim for which this federal court may grant relief, the court must dismiss his complaint.

> [2]The petitioner may have filed this civil rights case while there are appeals pending in state court based on the same issues. The publicly available docket shows that the plaintiff has five

5

> appeals pending in state court, two of which are appeals from cases he filed against the circuit court for Waukesha County and one of which is an appeal from a case which he filed against the records custodian of the Waukesha County District Attorney's Office. See Case Nos. 2022AP000336, 2022AP000651 and 2022AP000871 (available at https://wscca.wicourts.gov/). Although this may mean his has not exhausted his state remedies, the court nonetheless has analyzed his claims.

Dkt. No. 8 at 8-15.

In his motion to amend judgment, the plaintiff first contends that the court inappropriately applied absolute immunity and that because the complaint sought only injunctive and declaratory relief, the defendants are not protected by absolute immunity. Dkt. No. 10 at ¶1. The complaint alleged that the plaintiff sued the defendants in their official capacities for injunctive and declaratory relief. Dkt. No. 1 at 1, 5. While prosecutors are absolutely immune from liability from a §1983 damages claim for their prosecutorial functions, a plaintiff may state a claim against a prosecutor for injunctive relief in his or her official capacity, which is in effect a claim against the governmental entity, see Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted), if, among other things, the plaintiff alleges a "direct injury that is real and immediate." See Srivastava v. Newman, 12 F. App'x 369, 371–72 (7th Cir. 2001); see also Supreme Court of Va. v. Consumers Union of U.S., Inc., 446 U.S. 719, 736-37 (1980)). Although the court said that Boese and Kaczik may be entitled to absolute immunity, it overlooked the fact that the plaintiff's complaint did not seek damages, seeking only unspecified injunctive and declaratory relief. The court also observed, however, that even if the defendants

were not immune from suit, the plaintiff failed to state a claim. The court's oversight does not impact its ruling unless the plaintiff has stated a claim for relief or could do so. And, as explained below, the plaintiff has not shown that the court's determination that the complaint failed to state a claim and that allowing him to amend would be futile was erroneous.

The plaintiff contends that the court abused its discretion by not accepting his allegations as true, contrary to Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Dkt. No. 10 at ¶2. According to plaintiff, the court erred when it stated: "The ALJ questioned him about it and, it appears, ended up agreeing with him the packet was wrong. So instead of proceeding with the reconfinement hearing at the time, she scheduled another one." Id. at ¶4 (quoting Court's Screening Order, Dkt. No. 8, at 13). The plaintiff states that, contrary to the court's interpretation of the complaint, the plaintiff "objected to having the hearing when the ALJ first asked, then after being put under duress by coercive questioning, he finally conceded proceeding with the hearing using the erroneous reconfinement packet." Dkt. No. 10 at ¶4. The plaintiff is incorrect that the court did not accept his allegations as true. The screening order acknowledges that the plaintiff alleged that Judge Hansen

> coerced the plaintiff to not waive the [first] hearing by stating that 'she's already here' and reminding him that he had already been incarcerated for 174 days; the plaintiff says he then stated, 'you know what, we'll have the hearing.' Id. at ¶10. Judge Hansen allegedly put the plaintiff under oath and questioned him regarding the inaccurate revocation packet, concluded that the packet was 'suspect,' and said that she would contact his agent and leave the record open. Id. at ¶11. The plaintiff states that Judge Hansen rescheduled the hearing for August 10, 2020 with the correct information. Id.

7

At the rescheduled hearing on August 10, 2020, Judge Hansen had the correct information, and the plaintiff was revoked. Id. at ¶12. The plaintiff states that he served his time and that he is not challenging the length of incarcerated or his criminal case. Id.

Dkt. No. 8 at 4-5. The court acknowledged the plaintiff's allegation that Judge Hansen coerced him into holding the first hearing. The plaintiff has not demonstrated that the court's analysis constitutes a manifest error of law.

The plaintiff also contends that the court did not address his allegations that "all the overt acts performed by state actors and private individuals were *intentional*" and that this should have "automatically implied to the court the likelihood of the deprivation of an impartial ALJ." Dkt. No. 10 at ¶5. According to the plaintiff, he was not afforded "a neutral and detached hearing body" and due to the ALJ's behavior, he "was not given the opportunity due process requires, procedurally or substantively, of a reconfinement hearing." Id. (citing Morrissey v. Brewer, 408 U.S. 471, 474 (1982). The plaintiff states that

> [t]he crux of the matter, on May 9th 2022, a motion to quash was filed in the plaintiff's writ of mandamus case. The plaintiff was attempting to obtain all communication between the D.A. and his trial counsel due to a failure to disclose discovery. The AAG revealed there are a total of fifteen (15) pages of emails, but no text messages of communication between the two parties. The relevance is that on one of the emails Attorney Peter Wolff is discussing the details of the plaintiff's *reconfinement* hearing with the prosecutor, after the hearings took place. This particular email omits any pretext or response. An Office of Lawyer Regulation investigation revealed there are in fact text messages between he two parties but Attorney Wolff stated: "they do not discuss the plea deal." When the [plaintiff] initially asked both parties for all electronic communication between his attorney and the prosecutor, Attorney Wolff withdrew from his case, and the DA failed to respond.

8

Id. at ¶8. The plaintiff states that he "doubles-down on his 14th Amendment substantive and perhaps even procedural due process claims due to the 'arbitrary and irrational' behavior of the bias[ed] primary state-actor, the ALJ." Id. at ¶10 (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)). The plaintiff states that he alleged with specificity that the ALJ was on a mission to look outside the scope of a reconfinement hearing to revoke and potentially subject the plaintiff to more charges by proceeding with a botched hearing, and then failing to recuse herself for the second hearing. Id. (citing Washington v. Glucksberg, 521 U.S. 702, 720 (1997) "(Required allegation of government violated fundamental right to an impartial judge.)"). The plaintiff contends that the ALJ "deliberately ignored his objections to the hearing by 'acquiescing' and proceeding with coercive questioning to obtain compelled testimony, instead of fixing the mechanics of the hearing first." Id. (citing Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979) "([state official] watches open breach of the law and does nothing to prevent it.)").

According to the plaintiff, "[b]ottom line is, Attorney Peter Wolff had no business speaking with the district attorney about a parole *reconfinement* hearing that he wasn't representing the client, nor did the trial court have any bearing over." Id. at ¶11. He states that "the state action alleged in this matter is supported by facts containing particularity, and combined with Attorney Wolff's failure to disclose not only could infer malice, but creates a circumstantial 'enough possibility' to allege an express or implied agreement

9

Case 2:22-cv-01348-PP   Filed 07/17/23   Page 9 of 11   Document 12

with the state actors involved to violate the plaintiff's 14th Amendment due process rights." Id. (citing Adickes v. S.H. Kress, 398 U.S. 144, 157 (1970)).

The plaintiff states that if the court had accepted his allegations as true, "arbitrary and irrational would be an understatement to describe the above procedural and substantive due process violations." Id. at 9. The plaintiff asks the court to reconsider its decision and give him an opportunity to amend the complaint to allege sufficient facts to support his claims, "which include both violations of the 14th Amendment procedural & substantive due process." Id. He contends that, in the alternative, the court should modify its order to reflect the appropriate doctrine of absolute immunity. Id.

In sum, the plaintiff contends that if the court had liberally construed his allegations, it would have found that he states a claim for violation of his substantive due process rights because he alleges that the defendants' acts were intentional. He contends that the ALJ, the primary state actor, violated his substantive and perhaps procedural due process rights based on her "arbitrary and irrational" behavior. He says that the ALJ ignored his objections during the first hearing and then failed to recuse herself from the second hearing. The plaintiff also states that Attorney Wolff's failure to disclose allows an inference of malice.

The plaintiff has not shown that the court's screening order dismissing his case contains a manifest error of law. He received two hearings, and he does not challenge the decision revoking his probation. To the extent the plaintiff is concerned with the communication between Boese and Wolff, he

10

does not explain how this communication impacted his revocation hearing. The plaintiff contends that the court erred in not inferring that the ALJ was biased and that she wrongfully failed to recuse herself from the second hearing. He says that the court should have inferred that the ALJ was biased because he alleged that the defendants' actions were intentional. The court does not follow the plaintiff's reasoning. In any event, even if, as the plaintiff now states in his motion, he didn't receive a fair hearing because the ALJ was biased, the plaintiff's claim for damages (if sought) would be barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994).

The plaintiff's motion to amend judgment does not demonstrate that the court erred in dismissing his complaint. And the court reiterates that, while its practice is to allow plaintiffs a chance to amend the complaint, it need not do so if amendment would be futile, which it would be in this case.

The court **DENIES** the plaintiff's motion to amend judgment. Dkt. No. 10.

Dated in Milwaukee, Wisconsin this 17th day of July, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**